UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | DOCKET NO: 3:18-CR-165(JCH) |
| | : | |
| v. | : | |
| | : | |
| CARLOS DELGADO | : | November 14, 2019 |

## MOTION FOR PROBABLE CAUSE
### (FRANK"S HEARING)

COMES NOW, the defendant, Carlos Delgado, moves this Court for a probable cause hearing pursuant to Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674m 57 L.Ed. 2d 667 (1978). Pursuant to the Fourth amendment probable cause is fundamental. The defendant raises some compelling questions with regard to the affidavit in support, of which claims the defendant was in possession of 1 Kilogram of cocaine sometime between the date of June 21st-26th, of 2018, however, the inaccurate assertion is serious enough to warrant a **Frank's** hearing.

## The Arrest

1.      Defendant's claim stems from his arrest at the intersection of West Main Street and Holbrooke Ave., in Willimantic, CT. on Monday, July 9, 2018, @ 6:00 p.m. for the allegations of possession of drugs and Money Laundering. Defendant asserts that while on his motorcycle heading West on Main Street when he was unlawfully stopped, searched and then arrested (without an arrest warrant) (See, Docket between Docs.entries 9 and 10) by TFO Eric Myshrall of the DEA, Narcotics officer Lieutenant D. Golde and by the Willimantic police Department.

(See, DEA Form 6, dated 7/11/18, "Report of Investigation" pg.1 Details, No. 1)
The defendant further claims there was no basis for the police to stop and arrest
him and that the police made false statements about the circumstances surrounding
his arrest that sometime in June, 2018 the defendant either possessed, distribu-
ted 1 Kilogram of cocaine and laundered money. (See, attached Criminal Complain
@ pgs. 10-17) However, the record is overwhelmingly clear the defendant did nei-
ther possess nor distribute cocaine. (See, DEA Form 6, dated June 26, 2018,
"Investigative Surveillance of Controlled Delivery of Parcel)

BACKGROUND

The facts tending to establish probable cause for the issuance of this search
warrant are:

2.    The record reveals the following undisputed facts and procedural
history that on or about June 21, 2018 Postal Inspector Investigator Doyle of
the U.S. Postal Inspector Division was aleted by Postal Inspector Investigator
Hector J. Martinez of the Newark , NJ. Division--PMN Seizure Report #26433332,
to USPS Priority Mail parcel label# 9505 5103 3621 8171 2762 57, mailed on
June 20, 2018, from Guaynabo, P.R. 00969. The parcel bore a USPS Priority
Mail label with the following handwritten addressee information: "Ryan Pehody
2979 Main Stree, Coventry, CT. 06238," and a return address of "Nicol Martinez
Porticos de Guaynabo Edificio 4 Apt# 20 Guaynabo, P.R. 00969.

3.    On June 26, 2018, Inspector Doyle applied for and was granted a Search
& Seizure warrant for the parcel by the Honorable Robert A. Richardson, United
States Magistrate Judge, for the District of Connecticut. Inspector Doyle and
DEA TFO Myshrall searched the parcel, at the DEA HRO, and located inside 1128.6

total weight with packaging, of a white powdery substance which field t ested presumptedly positive for cocaine.

4.    The U.S. Postal Inspection Service PMN Seizure Report indicates that the reasons listed in the Parcel Description section that gave rise to alert was the following: "DSA: Parcel mailed from a known drug source area** FMA: Frequently mailed parcels to the same addressee/address** FRA Fictitious return address** FSN: Fictitious Sender's name** HNL: Same handwriting on numerous labels** RO: Rattling objects**

5.    The facts discern that the "Parcel was identified via a nightly report. Furthermore the facts also pinpoint that the Parcel was then taken possession of and inspected by Windsor Locks, CT., Police K-9 "Abby" and handler Officer Devanney." (See, U.S. Postal Inspection Service Boston Division Memorandum Activity Report) This report also founds similar particulars as the first report,  by acknowledging that "on or about June 21, 2018, Insector Doyle was alerted to: USPS Priority Mail parcel bearing#: 9505 51023621 8171 2762 57, mailed on June 20, 2018, from Guaynabo, P.R. 00969."

6.    To this end, these reports unmistakably confirm Inspector Sean Doyle and TFO Eric Myshrall took receipt of the subject parcel and discovered it contained cocaine but the record stops there. From at the time of the occurrence and days following the intercept, K-9 inspection and inventory of the subject parcel by Inspector Doyle and TFO Eric Myshrall, there are no other reports regarding the subject parcel.

7.    On Monday, July 9, 2018 @ 4:05 p.m. E.S.T. Robert M. Spector made the determination based on the information enclosed in the Affiant's  Supporting

3.

affidavit that the defendant violated the the following Federal offenses: "Possession of 1 Kilogram of cocaine in violation of 21 U.S.C. § 841(a)(1) and Money Laundering in violation of 18 U.S.C. § 1957."

8.    On this same day, the defendant is arrested on West Main Street, Willimantic, Ct.

9.    Consequently, on July 9, 2018, the affiant DEA TFO Eric Myshrall, filed a complaint alleging violations of 21 U.S.C. §§ 841 Possession of 1 Kilogram of cocaine and vilation of 18 U.S.C. § 1957, Money Laundering, against the defendant.

**Standard**

Where a defendant in a criminal proceeding, subsequent to the ex-parte issuance of a search warrant, makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by an affiant in his affidavit for the search warrant, and if the allegedly false statement is necessary to the finding of probable cause for issuance of the warrant, the Fourth amendment requires that a hearing be held at the defendant's request so that he may challenge the truthfulness of factual statements made in the affidavit.

A search warrant affidivat must set forth particular facts and circumstances underlying the existence of probable cause, so as to follow the magistrate to make an independent evaluation of the matter, and if an informant's tip is the source of information, the affidavit must recite some of the underlying circumstances from which the informant concluded that relevant evidence might be

4

discovered that the informant, whose identity need not be disclosed, was credible or his information reliable.

To justify a **Frank's** hearing, "a defendant must make a 'substantial prelimi-nary showing' that: (1) the claimed inaccuracies or ommissions are trhe result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the judge's probable cause finding." Id. (quoting United States v. Salameh, 152 F.3d 88, 113 (2d Cir 1998)).

10.    The defendant satisifies both of these criteria. First, paragraph 48 in the Criminal complaint affidavit in support slants and misleads the fact of possession of the "Subject Parcel" by the defendant without facts to esta-blish this inference. There is no police surveillance or report that would esta-blish this fact. This accusation prejudicially point the finger of blame on the defendant. Nowhere in the record does TFO Myshrall provides information (nor does the CS) that would settle this fact but the defendant is at a loss as to how the affiant managed to convince a magistrate to issue a Search & Seizure warrant. This claimed inaccuracy is the result of the affiant's deliberate falsehood or reckless disregard for the truth. It's difficult to fathom after scrutinizing this fact even as a novice how a trained eye such as Magistrate's would not impulsively ask the question: "Who possessed the subject parcel?" Or at the very least ask or state in the affidavit if Delgado was in possession of the this parcel.

11.    While there are no law enforcement investigative reports from either any of the members of the DEA Hartford Resident Office attesting to who was actually arrested for possession of the "Subject parcel," astonishingly,

law enforcement went to the extent of swearing under Oath (as the affiant did) before Robert M. Spector with hundred percent cast-iron certainty that the defendant was in possession or seen in possession of the subject parcel without a shred of proof to support this inference.

12.    Furthermore, the affiant's affdavitmakes numerous other conclusory allegations throughout the entire affidavit that Confidential Source CS#2, Julio Santiago, provided addresses to the defendant to which packages could be delivered to, along with tracking #s so that CS#2 could monitor the deliveries from February through July, 2018 in exchange for cash. But, surprisingly the affiant leaves out all the pertinent facts needed to support this inference, such information as, shipping like: tracking #s, and name of recipient and shippper?

13.    Particularly the affiant likewise avers in his affidavit in support that "on or about May 21, 2018, law enforcement identified another package intended for delivery to an unknown address the CS#2 provided but falls well short of facts--so much so that there is no known (predated U.S. Postal Investigation reports) attestisng to the alert of any suspicious packages prior to this date or any other dates except the one on June 20, 2018. ...."Moments later, on this day (affiant further claims) Delgado was allegedly observed exiting form the same street and pulling into an adjacent property." "Although law enforcement was unable to observe DELGADO physically poicking up the parcel the CS's location due to the risk of exposure, but the Location information from DELGADO's cellular telephone evidenced that DELGADO's cellular telephone travelled to CS#2 loaction.

14.    U.S. Postal Investigator and Law enforcement, and K-9 inspection reports, as well as, Search & Seizure warrants on all the other instances throughout affiant's investigation wh ich CS#2 claims he picked up packages for the

6

defendant especially  (twice) on June 4, then on June 12, 2018 are missing all
the pertinent facts--there are no alert reports, Narcotics detecting K-9 reports
among other things, to reach such conclusions, However, the government's asser-
tions that Mr. Delgado was in receipt of suspicious packages is misplaced and,
at bottom, relies on shifting, unreliable, illogaical, and uncorroborated infor-
mation from not only the CS#2 but the affiant as well. The government produced
in discovery a list allegedly suspicious packages in an Excel Spreadsheet entit-
led "Case Parcels.xlsx," but none of the parcels listed correspond to any of
the of the alleged instances (in the affidavit) where the CS#2 took receipt of
packages and delivered them to Delgado nor much less for some irrational reason
thees suspicious packages incoporated in his affidavit in support.

15.     Indeed in accordance with DEA manual/protocol, when a U.S. Postal
Investigator suspects that a parcel is suspicious, he immediately alets the DEA
that a particular parcel may contain contraband . At this stage common practice
is for the Investigating agent along with the Postal Investigator to pull the
suspicious package aside and arrange for a narcotics detecting K-9 to come and
inspect the subject parcel to determine if the K-9 alerts to the odor of narco-
tics. Next if  there is a positive alert, the investigating agent applies to a
Magistrate Judge based on these findings of probable cause for a Search & Seizure
warrant. Subsequently, with warrant in hand, agents then open the suspected par-
cel todetermine if in fact the parcel contains contraband. Thereafter, in a
majority of cases, a controlled delivery would be conducted utilizing an under-
cover investigator (UC).

16.     Remarkably, none of these conceivable methods were attempted much
less some account as to the alert of a suspicious packaage via say U.S. Postal
Inspection Service PMN Seizure Report nor any other report for that matter

7

Surprisingly, the DEA authored a report indicating that surveillance was conducted on May 21, 2018 without assuring themselves if this suspicious package in fact contained contraband.

17.   If you remove the false accusation in paragraph 48 of the affiant's affidavit there are no incriminating acts enough even with the other conclusory allegations to merit a finding of probable cause. Even if the other numerous allegations were true particularly that on May 21, 2018 law enforcement conducted surveillance of this mysterious address the affiant h imself admits that "moments later, on this day (affiant further claims) Delgado was allegedly observed exiting from the same street and pulling into an adjacent property. "Although law enforcement was unable to observe DELGADO physically picking up the parcel the CS's location due to the risk of exposure." Absent paragraph 48, there is not enough for any reasonable person to infer that the defendant was violating federal laws. Without any doubt the alleged falsehood in paragraph 48 of the criminal Complaint in support was necessary to the judge's probable cause finding.

**Conclusion**

18.   Here, as explained above, there are no law enforcement reports that the defendant was anywhere near 2979 Main Street, Coventry, CT. on the date the "Subject Parcel" was delivered (whenever that was ). It is a gross mis carriage of justice to falsely incorporate in any affidavit if they are not true.

**Relief Sought**

WHEREFORE, defendant prays that the Court grants the defendant's motion for a Frank's Hearing.

Respectfully submitted,

THE DEFENDANT,
CARLOS DELGADO

_____
Francis L. O'Reilly
O'Reilly & Shaw
41 Unquowa Place
Fairfield, CT 06824
(203) 319-0128 (phone)
(203) 319 0128 (fax)
attflor@aol.com
Federal Bar No.: ct17505