```
 1                     UNITED STATES DISTRICT COURT

 2                       DISTRICT OF CONNECTICUT

 3   _____
     UNITED STATES OF AMERICA)
 4             Government )        NO: 3:18CR165(JCH)
                           )       June 19, 2019
 5    vs.                  )       12:34 p.m.
     CARLOS DELGADO        )
 6             Defendant.  )
     _____)    141 Church Street
 7                                  New Haven, Connecticut

 8

 9                          HEARING

10

11

12

13   B E F O R E:

14          THE HONORABLE JANET C. HALL, U. S. D. J.

15

16   A P P E A R A N C E S:

17   For the Government : Natasha Freismuth
                          Patrick Caruso
18                        U.S. Attorney's Office-NH
                          157 Church St., 25th Floor
19                        New Haven, CT 06510

20   For the Defendant :  Francis L. O'Reilly
                          Justin C. Pugh
21                        O'Reilly & Shaw, LLC
                          41 Unquowa Place
22                        Fairfield, CT 06824

23

24

25
```

1    THE COURT:  We're here this morning in the

2    matter known as United States of America versus Carlos

3    Delgado 18cr165.  If I can have appearances please.

4    MS. FREISMUTH:  Good afternoon, Your Honor.

5    Assistant United States Attorney Natasha Freismuth for

6    the Government.

7    MR. KAPPAS:  Robert Kappas.  To my left is Mr.

8    Delgado.  Also present is Paul Tuckman.

9    MR. TUCKMAN:  Good afternoon, Your Honor.

10    THE COURT:  Good afternoon.

11    We're here in connection with I guess I will

12    call it correspondence from the defendant wishing to have

13    a different lawyer appointed.  I just realized in

14    preparing for this in the last few days that I believe

15    the letter is on the docket.  But Mr. Delgado attached a

16    complaint against Attorney Kappas and I did not forward

17    that.  I'm not sure if that was a conscious decision not

18    to forward it or put it on the docket.  Have you folks

19    seen it?  Was it on the docket?  So I know what you have

20    seen.  If there's any objection that you haven't seen

21    something, I can solve it.

22    MR. KAPPAS:  Your Honor, I do not believe it is

23    on the docket and I have not seen it.

24    MS. FREISMUTH:  Your Honor, I also have not seen

25    it, but have no objection to not being provided a copy.

1          THE COURT:  It is referenced in I think what you

2     did receive, but I didn't see any purpose in spreading

3     that further.

4          We're here, as I said, because I received

5     correspondence from Mr. Delgado which, of course, is he

6     doesn't -- I guess you can write to me whenever you want,

7     Mr. Delgado, but that's not the proper procedure.

8          If you are unhappy your lawyer, the thing to do,

9     which won't happen again, but which you need to ask him

10    to make a motion to withdraw and even though you might

11    think he wouldn't do that, he would do that even if he

12    didn't agree with it.

13         So with that little procedural issue aside, the

14    letter from Mr. Delgado basically says he's unhappy with

15    the services of Attorney Kappas.  And he wants a new

16    lawyer because he doesn't think he's being adequately

17    represented and he's filed a grievance against Attorney

18    Kappas.  Has there indeed been a grievance filed that you

19    know of?

20         MR. KAPPAS:  Your Honor, I've never received one

21    from a state agency, but I do know that that process does

22    take sometime.

23         THE COURT:  I have a copy of something that

24    purports to be that dated May 15.  That's what I didn't

25    forward on.  I figured you would have had it and the

1   Government didn't need to see it because, you know, not

2   that I think it reveals any sort of defense strategy, but

3   I didn't want to open that box.  Obviously we'll get you

4   a copy after the proceeding.  Diahann, if you would make

5   a copy for counsel.

6        Well, we have been through this before, Mr.

7   Delgado, and I think the last time when I replaced I

8   think it was Attorney Klein who replaced Attorney

9   Frederick, that I didn't want to --

10       MS. FREISMUTH:  A point of clarification.

11  Attorney Klein replaced Attorney Kurmay who replaced

12  Attorney Frederick.  Attorney Frederick was first.  She

13  withdrew due to a conflict.  Then he was appointed CJA

14  Charles Kurmay and then Gerald Klein.

15       THE COURT:  Then Attorney Klein.  I'm sure I

16  said it when I replaced Attorney Klein, Mr. Delgado, and

17  I might have said it when I replaced Attorney Kurmay.

18  Generally when people are unhappy with the attorney and

19  there's a breakdown in the relationship, I don't want to

20  get into whose fault it is, who has not listened to whom,

21  who is not being reasonable.

22       I basically say I will replace counsel and get

23  you a new counsel.  If this happens again, then I will

24  begin to understand that the defendant, if it is the

25  defendant seeking a new lawyer, is the one who wouldn't

1    be satisfied with any lawyer.  Not counting Attorney

2    Frederick.  That had nothing to do with your

3    dissatisfaction.  Although I recall you were dissatisfied

4    with her.  Her withdrawal was for her reason.

5          You are now here saying that three lawyers were

6    unacceptable to you.  That's a pretty compelling case for

7    me that no lawyer I appoint you would be adequate in your

8    view.

9          THE DEFENDANT:  Will you allow me to speak?

10         THE COURT:  I will but first I need to advise

11   you and I have advised you of this before, anything you

12   say, you should understand is likely going to be used

13   against you by the Government.  You may think that you

14   are not going to say anything that will hurt you.  You

15   have to understand that oftentimes a person doesn't

16   realize what they were saying can be harmful and used

17   against them.

18         You can communicate with me through your lawyer.

19   I know there's not a great relationship between you and

20   Attorney Kappas or your view of Attorney Kappas is

21   negative.  He, I'm sure, will repeat what you say to me.

22   That way the words aren't your words.  That's one way to

23   protect you.  If you feel that you have to speak directly

24   to me, that's your choice.  I don't advise it.

25         THE DEFENDANT:  I want to clarify one point.

```
 1              THE COURT:  If you want to speak, you have to
 2    pull the mic closer.
 3              THE DEFENDANT:  I never asked to have Kurmay to
 4    withdraw, number one.  He was automatically withdrawn
 5    when my family retained Klein.
 6              THE COURT:  You are right about that.  That's --
 7              THE DEFENDANT:  It is not like I'm spitting
 8    these lawyers out left and right getting rid of them
 9    because I'm not happy with them.  Even though I wasn't
10    but that wasn't how things unfolded.  It is not like I'm
11    getting rid of these lawyers left and right.  Just the
12    way things are.
13              THE COURT:  I recall with Attorney Kurmay --
14              THE DEFENDANT:  The only one I've gotten rid of
15    Klein and now with Mr. Kappas.  That's two.  One and now
16    this second issue with this one.
17              THE COURT:  Are you through?  Just so I know to
18    talk.  We both can't talk at once.
19              THE DEFENDANT:  I am already done.
20              THE COURT:  I want to respond to what you said,
21    sir.  I do recall that you were not happy with Attorney
22    Kurmay or Attorney Frederick, but you are correct you did
23    not ask to replace them for reasons of dissatisfaction.
24    Your family I guess brought in Attorney Klein on retainer
25    and then you were unhappy with Attorney Klein.  You asked
```

1   me to get you a new lawyer.

2           THE DEFENDANT:  I didn't ask for one.  I asked

3   to give me time to retain new counsel.  You chose to

4   actually appoint Mr. Kappas.  I didn't ask for that.

5           THE COURT:  Let's break that down.  You didn't

6   want Attorney Klein to remain as your lawyer, correct?

7   He wasn't doing what you wanted.

8           THE DEFENDANT:  Yes, that's true, yes.

9           THE COURT:  And I'm trying to remember, but I

10  would be surprised if I hadn't given you sometime to get

11  replacement counsel and you weren't able to and I had to

12  appoint someone else because you were dissatisfied with

13  Attorney Klein.

14          Now, we're here with Attorney Kappas.  You are

15  dissatisfied with Attorney Kappas.  Basically you're

16  asking me to violate what is my usual rule which is one

17  time you get to replace counsel, but the second time you

18  ask, it is basically no one will -- not you but in

19  generally speaking, no one, no lawyer would appear to

20  satisfy that defendant and therefore, maybe that

21  defendant wants to represent himself.

22          THE DEFENDANT:  That's not the case here.  I

23  don't have the experience to represent myself and I'm

24  just for basic due process.  Discovery materials, you

25  know, I have written and I have asked for a whole long

1    list of stuff that we have been -- deadline next month.

2    The same thing as last time we rescheduled my trial date.

3    Mr. Kappas was unprepared.  And we're still in limbo in

4    terms of just, you know, starting a trial with who knows

5    what type of evidence.  When am I going to get a time to

6    object to any evidence that might been tainted or might

7    have been obtained wrongfully?  When am I going to get

8    that opportunity?  That's my whole dislike of Mr. Kappas

9    approach.  It goes to the core of my fundamental due

10   process rights to be able to at least dig up some stuff

11   and fetter some issues that me and Kappas has discussed

12   before.  That goes to why I'm dissatisfied with counsel.

13            THE COURT:  Well --

14            THE DEFENDANT:  So that's two.  That's so bad on

15   me.  That's the reason why I'm in this courtroom, right?

16            THE COURT:  The problem I have is the reasons

17   you are unhappy with Attorney Kappas --

18            THE DEFENDANT:  I just explained my reasons and

19   goes to the core of my mounting a defense.  If I'm

20   whining or if I'm actually making everyone unhappy, then

21   oh, well.  This is my day in court.  I have to prepare

22   for hopefully some trial that's going to be in July and

23   September.

24            THE COURT:  I understood one of your criticisms

25   was that Attorney Kappas wouldn't file a motion to

1    dismiss the Indictment because the Indictment was based

2    on perjured testimony before the grand jury.  Is that

3    something you wanted him to do?

4            THE DEFENDANT:  That's something along the

5    lines.  That's more towards the end of it.  A lot of

6    discovery material that we have actually discussed in

7    detail and I actually outlined it in an actual

8    correspondence to Mr. Kappas and he knows exactly the

9    type of discovery material that I'm looking for that's

10   actual material paramount to me mounting a defense so the

11   same issue I had with Klein.  I'm having the same issue

12   with Kappas.

13           THE COURT:  Can I turn to the reason I just

14   recited as one of your grounds is I'm not the world's

15   expert on all things criminal, but I have no idea of

16   anyone filing a motion to dismiss because testimony given

17   at the grand jury is allegedly perjurious.  That's what a

18   trial is for.  I don't know.  Maybe I'm missing

19   something.  Attorney Kappas or government's counsel?

20           MR. DELGADO:  (Inaudible.)

21           THE COURT:  I'm still talking if you haven't

22   noticed.  When I get to talk, if you would wait for me to

23   finish.  I'm trying to wait when you finish talking, but

24   I would like to finish what I'm talking about.

25           Attorney Freismuth, the defendant wouldn't trust

1   your view, but I would like to be corrected if him

2   mistaken.  Is there ever a basis for a motion to dismiss

3   an indictment based on perjured testimony?

4          MS. FREISMUTH:  Your Honor, to be perfectly

5   candid I have never researched the issue.  It has never

6   been presented to me.  I can say in this case the

7   defendant and counsel have not been provided grand jury

8   material, so I don't know what basis he would have to

9   believe that any of the testimony is perjured.  We

10  haven't turned over the transcripts.

11         THE COURT:  Hypothetically, let's assume that a

12  person gets indicted and it is based upon statement and

13  testimony of a witness whose testimony is viewed by the

14  defendant as false, you know, the defendant went through

15  a red light and the defendant says I didn't go through a

16  red light, is that ever done on a motion to dismiss?  I

17  thought motions to dismiss were limited to the face of

18  the indictment and raise legal issues, not factual

19  issues.

20         MS. FREISMUTH:  That's my understanding as well.

21  I could be mistaken.

22         THE COURT:  Attorney Kappas, have you been asked

23  to make that type of motion or not?

24         MR. KAPPAS:  I have not, Your Honor.

25         THE COURT:  You haven't been asked?

1          MR. KAPPAS:  No, Your Honor.

2          THE COURT:  You have a lot of experience.  Have

3    you ever heard of such a motion?

4          MR. KAPPAS:  I have not, Your Honor.

5          THE COURT:  The second thing that Mr. Delgado

6    has said, Attorney Kappas, is that you haven't gotten the

7    discovery and you haven't reviewed it yourself and you

8    haven't reviewed it with him.  I would like to hear what

9    you have to say about that.  Is Mr. Delgado being

10   perfectly reasonable in saying that and you have not got

11   around to doing what you need to do to prepare for this

12   case?

13         MR. KAPPAS:  I do not believe that is correct.

14         THE COURT:  Have you received all of the

15   discovery that's required of the Government to provide to

16   you under the court standing order and Local Rule 16?

17         MR. KAPPAS:  I have.  I will say when I received

18   a letter from Mr. Delgado back in April I believe, he

19   asked for a very specified list of information that he

20   requested that I get from the Government.

21         I promptly issued a letter to the Government

22   saying please provide to me these materials if they

23   exist.  I have not received a response to that letter

24   yet, but to the extent that Mr. Delgado is inquiring

25   after information, I'm not a wall and the inquiry stops

1    with me.  I take what he wants to get done.

2         Mr. Delgado throughout the course of the

3    relationship has raised some very novel legal issues.  I

4    have researched each of those issues and responded to him

5    in writing.

6         THE COURT:  Attorney Freismuth, did you respond

7    to that letter?

8         MS. FREISMUTH:  I did, Your Honor.  The letter

9    from Attorney Kappas was dated May 17.  I responded on

10   May 31.

11        To be fair, some of my responses were asking for

12   clarification that I have not received.

13        THE COURT:  Did you produce anything or had you

14   produced what you were required to produce?

15        MS. FREISMUTH:  They either had not been

16   produced.  They were Jencks material that I intended to

17   produce closer to trial.

18        THE COURT:  You didn't get that, Attorney

19   Kappas?

20        MR. KAPPAS:  I have not.  I was on trial last

21   week before Judge Underhill.  Two weeks prior to that I

22   was preparing.  It may be in my office, but I have not

23   received it.

24        THE COURT:  I presume there was the production

25   by the Government at the beginning out of the gate.

1      MS. FREISMUTH:  Yes, Your Honor.  Under the

2  Court's direction, we also produced a lot of material

3  directly to Wyatt.

4      THE COURT:  Have you reviewed the material

5  that's been produced in discovery?

6      MR. KAPPAS:  I have.

7      THE COURT:  Have you undertaken any further

8  investigation of the circumstances of the charges?

9      MR. KAPPAS:  No, Your Honor.

10      THE COURT:  Do you intend to do so in advance of

11  trial?

12      MR. KAPPAS:  Your Honor, depending on how things

13  play out here in the relationship, yes.  I think there's

14  certain avenues that may provide some fruit, but I don't

15  believe it is to the extent that Mr. Delgado wishes.

16      THE COURT:  When is the date for trial?

17      MR. KAPPAS:  September 9 is jury selection.  The

18  specific dates for trial have not yet been set.

19      THE COURT:  All right.  Mr. Delgado, other

20  than -- did you send a copy of the letter to government's

21  counsel in May, did you send that to Mr. Delgado?

22      MR. KAPPAS: Subsequent to that, I informed him I

23  had passed along his request.

24      THE COURT:  Did you give him a copy?

25      MR. KAPPAS:  I just referenced that I asked the

1    Government to produce all the items he had requested.

2         THE COURT:  Other than the materials that you

3    requested of Attorney Kappas that apparently he's asked

4    for, he hasn't got it yet, was there more discovery that

5    you think you should have that you haven't gotten, Mr.

6    Delgado?  Is there any other discovery?

7         THE DEFENDANT:  Yes.  The discovery is an actual

8    arrest.  Initially when I was arrested on a complaint,

9    there was an actual DEA Form 6.  I believe my

10   recollection is correct was a June 27 report that was

11   drafted up by Mr. Eric Marshall (phonetic) where he

12   intercepted I guess a parcel of narcotics, which is

13   narcotics that mysteriously I possessed.  There's part of

14   that investigation report that are missing.  I'm pretty

15   sure a person as experienced as Mr. Eric Marshall

16   intercepted from the mail, he would probably attempted to

17   perform some type of controlled delivery of this package.

18   Mysteriously now it appeared in my affidavit accusing me

19   of possessing it when I have never possessed it and the

20   record is clear that I never possessed that package.

21        Furthermore, there's also the informant.

22   Informant information I asked for previously.  The AUSA

23   said she would provide more information in regard to his

24   identity.  I also mentioned that on our December 12

25   hearing, our January 30 hearing, I know who the informant

1    is.  He lives at the same address where this mysterious

2    package in my affidavit was mysteriously supposed to be

3    delivered to.  This information that I'm still without.

4    We don't have it.  To determine exactly, you know, who

5    was at fault here and these are the issues that I had

6    with Klein.  That's are some of the issues with Attorney

7    Kappas.  Why is the AUSA stonewalling and still not

8    providing this information?

9         THE COURT:  Attorney Kappas, have you asked for

10   information on the identity of the informant in any

11   material that the Government might have that would be

12   discoverable on him?

13        MR. KAPPAS:  I have, Your Honor.  That occurred

14   actually Mr. Delgado -- I think it was my first court

15   appearance with Mr. Delgado that exchange was placed on

16   the record at that time, if I recall correctly.

17        THE COURT:  Did you get anything or get an

18   answer from the Government that they are not going to

19   turn it over because they are not going to use him as a

20   witness or for whatever reason the Government might have

21   had?

22        MR. KAPPAS:  I don't believe I received a

23   response in writing in that regard, but obviously the

24   Government may have a different position.  I believe that

25   when those materials will be turned over immediately

1  prior to trial under Jencks.

2  THE DEFENDANT:  If I may --

3  THE COURT:  Yes, sir.

4  THE DEFENDANT:  I'm pretty sure.  I don't know

5  how well-informed you are about my situation.

6  THE COURT:  Less than you might think.

7  THE DEFENDANT:  I'm saying I don't know.  That's

8  the reason why I asked.  I don't know.  I'm pretty sure

9  that you deal with many cases.  I know that Mr. Eric

10  Marshall's supporting affidavit to submit a complaint.

11  THE COURT:  He's an agent I'm assuming.

12  THE DEFENDANT:  Yes, the main agent,

13  investigating agent, well, that supporting affidavit

14  dealt with 95 percent of it, I would say one person that

15  supposedly witnessed me transacting with this informant,

16  so I'm pretty sure I have the right to confront this

17  witness.  The only one throughout this whole affidavit

18  testifying that I conducted certain types of criminal

19  conduct, so I feel that under the law, I have every right

20  to confront this witness at trial.  When am I going to

21  get ready to prepare it and put on the record this

22  person, their background, their credibility and

23  et cetera.

24  So then this is information that I also had the

25  issue with Mr. Klein which I have been addressing to Mr.

1  Kappas and I know he's busy and have other trials to

2  prepare for, but I believe it is vital for me to obtain

3  this information at least within a reasonable amount of

4  time.

5          THE COURT:  Attorney Freismuth, does the

6  Government intend to use the cooperating witness at

7  trial?

8          MS. FREISMUTH:  Yes, Your Honor.

9          THE COURT:  When are you going to turn over his

10  identity?

11          MS. FREISMUTH:  A point of clarification.

12  Attorney Kappas is correct.  He did ask me for additional

13  materials in February.  February 19th we produced a host

14  of materials pertaining to the potential cooperating

15  witness who might testify because the defendant had

16  raised some concerns that there might be Brady issues or

17  something in his background.  We turned over a host of

18  materials that were redacted just to remove the

19  individual's name.  As conveyed to Attorney Kappas, with

20  a trial date set in September, we intend to turn over all

21  the materials in July.  We have concerns about exposing

22  the CS's identity.

23          THE COURT:  The defendant says he knows who it

24  is, but that's all right.  What he's saying he needs to

25  prepare for trial it sounds like you have given the

 1    substantive material, just not the name.  Is that the

 2    only thing that's been redacted?

 3            MS. FREISMUTH:  That's correct, Your Honor.

 4            THE COURT:  Attorney Kappas, did you get this

 5    material in February?

 6            MR. KAPPAS:  Your Honor, right now I don't have

 7    a specific recollection.  If the Government says I

 8    received it, then I have no reason to doubt it.

 9            THE COURT:  Did you give it to Mr. Delgado?

10            MS. FREISMUTH:  I apologize.  I produced it as

11    protected material.  It was not sent to Wyatt.  It would

12    have been available for defense counsel to review and

13    review in the presence of the client, not to give a copy.

14            THE COURT:  I will change my question.  Did you

15    review it with your client?

16            MR. KAPPAS:  I believe I did.  I don't have the

17    specific recollection of the date that I did that.

18            THE DEFENDANT:  No, Your Honor.

19            THE COURT:  Okay.  Then the other thing you

20    mentioned was something to do with your arrest.  Is it

21    that you think that there's one source being most of the

22    basis for arresting you?

23            THE DEFENDANT:  The thing is this that the

24    source was the one that was arrested with the parcel that

25    I'm being accused of.  That's my theory.  I also showed

1    --

2              THE COURT:  I don't understand what you want to

3    complain about.

4              THE DEFENDANT:  I want a copy of his arrest

5    record.  I want a copy of that he was the one arrested.

6    There's also a motion.  The reason why Tracy Fredrick

7    withdrew back in July of last year was because it was a

8    conflict because the Government kept quiet about his

9    arrest.  The conflict that Tracy Frederick had with me

10   and her representing me was because I guess either the

11   federal defender's office or Tracy Fredrick was

12   representing the informant.

13             THE COURT:  I understand your desire to have

14   information about the informant.  I understand that.  It

15   doesn't sound like the Government has any objection to

16   you having information so long as they don't disclose the

17   person's name.  Given what you want to know --

18             THE DEFENDANT:  I want his arrest record.

19             THE COURT:  Let me finish.  So what I'm not

20   understanding is what you want to do about your arrest.

21             THE DEFENDANT:  Not my arrest, his arrest, the

22   informant's arrest.

23             THE COURT:  And that I doubt would be have been

24   a part of what you disclosed.  Is it, Attorney Freismuth,

25   or did you disclose his criminal record?  You wouldn't

1    have done that, right?

2          MS. FREISMUTH:  We disclosed a redacted criminal

3    record.  I can offer to the Court the defendant's

4    recitations of the procedural facts are not correct.

5          THE COURT:  That's fine.  When you say that you

6    are going to produce more material in advance of the

7    trial, I presume that's when I do a scheduling order,

8    understanding the Government doesn't have to turn over

9    certain material until after the witness testifies.  The

10   Government in this district usually is obliging in order

11   to avoid the Court's observation to a jury that if only

12   the Government had given the stuff to the defendant

13   sooner, we wouldn't all have to sit here and wait.  In

14   light of that subtle pressure, the Government usually

15   acquiesces in a pretrial order that depending on the case

16   and the number of witnesses, I usually set about three

17   weeks out from trial.  Is that what you are referencing

18   when you say you intend to produce more material in

19   August?

20         MS. FREISMUTH:  I said July.

21         THE COURT:  I'm having trouble hearing

22   everybody.  Maybe we turned it down because I thought I

23   was loud.  Everybody else is now turned down.  You need

24   to speak right into the mic.

25         You said July?

1          MS. FREISMUTH:  Our intention is to turn it over

2     in July in anticipation of a September date.  If Mr.

3     Delgado has a new attorney and a trial gets pushed, we'll

4     move that deadline as well.

5          THE COURT:  Well, I guess there's a couple of

6     things going on right now, Mr. Delgado.  One is it sounds

7     like there is discovery.  I don't know if you followed

8     the business about how the Government has designated some

9     of this discovery about the cooperator.  What that means

10    is you get to read it and learn the information, but you

11    have to do it with your lawyer.

12          In other words, you are not allowed to take a

13    copy because what's happened and I will tell you it has

14    happened.  Somebody was a cooperator.  A defendant gets

15    that piece of paper calling him that, then that gets sent

16    around prisons and people get attacked.

17          You will be able to see the substance of what

18    you want to see.  I guess what's the problem here is

19    whether it slipped between you and Attorney Kappas,

20    whether he did go out, whatever, that can happen soon,

21    right, so that's not going to be a problem.  And it

22    includes the criminal record as you heard counsel say.

23          THE DEFENDANT:  When I may, if I can add to

24    the -- I also was -- in this correspondence to Attorney

25    Kappas I was also asking for DEA Form 473, 512 which is

 1    when the confidential source signs he agreement.

 2           MR. KAPPAS:  May I have a moment please?

 3           (Speaking with the defendant).

 4           THE DEFENDANT:  I guess Mr. Kappas has those

 5    items covered.  My last request would be I brought it up

 6    December 12 when I had the issue with Klein providing me

 7    with the information that I was inquiring just now and

 8    this is basically the whole reason why I had the issue

 9    with Klein and me and Mr. Kappas is kind of having a fall

10    out.

11           The thing that I also want is the actual search

12    warrant for the July 9th.  I know that the AUSA, you had

13    asked her on December 12 if she actually had a warrant

14    and she answered that she did.  But the warrant only

15    shows a face of a warrant.  I know the warrant consists

16    of four pages, the application, the inventory sheet and,

17    you know, a copy for me which I have never gotten.  I

18    never got a copy of the inventory sheet.  It's been

19    almost 11 months since I have been incarcerated.

20           Lastly, the return to sign and sent back to the

21    issuing magistrate.  I don't have any of that information

22    also.

23           THE COURT:  Attorney Freismuth.

24           MS. FREISMUTH:  Your Honor, in this case

25    numerous search warrants were obtained.  We have produced

1    the search warrants. I have not produced the returns, but

2    it is my intention to do as articulated in the May 31

3    letter.

4              THE COURT:  How many search warrants were there?

5              MS. FREISMUTH:  Multiple.  I believe he's

6    referencing the one that's pertaining to the date of his

7    arrest where we searched his home and a car.  That's what

8    he's referring to, those were produced, but again I will

9    produce the returns.

10             THE COURT:  When you say they were produced,

11   when you produce a search warrant in the criminal

12   discovery, you are producing the application with the

13   judge's approval.  Are you producing the affidavit that

14   was the basis for the application?

15             MS. FREISMUTH:  Yes, Your Honor.

16             THE COURT:  Then a return sheet of what was

17   found?

18             MS. FREISMUTH:  The return sheet has not been

19   produced yet.  It is one of the things that Attorney

20   Kappas asked for and I indicated in my response they

21   would be produced.

22             THE COURT:  When?

23             MS. FREISMUTH:  Immediately.  We're working on

24   getting them returned.

25             THE COURT:  So that will get done?

1          MS. FREISMUTH:  Yes, Your Honor.  Aside from the

2     returns, all the materials were produced to defense

3     counsel and the defendant at Wyatt.

4          THE COURT:  All the search warrants?

5          MS. FREISMUTH:  To the best of my knowledge.

6          THE COURT:  Was the defendant given access?

7          MR. KAPPAS:  The CD'S of all of those are at

8     Wyatt.

9          THE COURT:  The application, the supporting

10    affidavit, the judge's signature, things like that?

11         MR. KAPPAS:  Yes, Judge.

12         THE COURT:  So you are shaking your head, Mr.

13    Delgado.  I know in December we talked about it.

14         THE DEFENDANT:  I did and I remember if you

15    recall January 16 I believe it was Kappas's first

16    appearance, we had an issue where those CD'S were sent to

17    me January 4 and then mysteriously when I looked at some

18    of the actual warrants, especially two, one for

19    permission to come out to the property 86 Pleasant Valley

20    Road in Mansfield, Connecticut, to attach the GPS to my

21    Cadillac, all the supported facts instead of being

22    predated were postdated.

23         When I told Mr. Kappas, less than a week later

24    after that date of my court appearance, the CD'S were

25    gone.  I spoke to the evidence coordinator at the

1    facility.  She says that the AUSA called and asked for

2    those CD'S.  Most of those all the warrants that I saw on

3    the digital media all of them had the face warrant.  None

4    of them had returns.  They were blank.  I don't know if

5    they are real or authentic.  I asked Kappas I don't want

6    anything in media.  If you can send something, send it in

7    physical paper.  I just don't trust media.  Get to it

8    really easy.  Who knows if it is authentic or not.

9           THE COURT:  So you haven't looked at it since

10   early January?

11          THE DEFENDANT:  No.  All the CD'S were taken

12   back.  I don't have any of that.

13          THE COURT:  Who took them back?

14          THE DEFENDANT:  If I want to make a copy off the

15   CD's, the facility doesn't allow me to.

16          THE COURT:  I understand that part.  But have

17   you gone and asked the person at Wyatt, I would like to

18   look at the CD'S again.

19          THE DEFENDANT:  They are no longer at Wyatt.

20          THE COURT:  How do you know that?

21          THE DEFENDANT:  I have been going down to

22   evidence and check.

23          THE COURT:  That's my question.  Have you asked

24   and been told they are not there, whatever you were told.

25   I want to know if you went and asked.

1        THE DEFENDANT:  Yes, ma'am.

2        THE COURT:  Anyone know?

3        MS. FREISMUTH:  Some points of clarification.

4   This was discussed I believe two hearings prior.  The

5   Government in its initial production to Wyatt sent in

6   materials that should not have been on the disk.

7        THE COURT:  So the idea was you were going to

8   get that back and get a new one.

9        MS. FREISMUTH:  I called the day they were

10  pulled.  The disks with the replacement copies went out

11  the next day.  It was sent to Wyatt on the 4th of January

12  along with additional material.  The defendant is

13  correct.  He cannot have copies, but the actual materials

14  were sent.

15        THE COURT:  And when you say materials, every

16  search warrant that applied to the defendant, every

17  affidavit in support of the search warrant application,

18  but not the returns, have been sent to Wyatt sometime in

19  January after replacing an earlier version and have been

20  available with the paralegal or whatever the woman is

21  called, I forget her name, at Wyatt who allows prisoners

22  to request time to come look at their materials?

23        MS. FREISMUTH:  That's my understanding, Your

24  Honor.  I'm looking at my discovery log.  I see the

25  notation and the Bates Stamp for the different dates that

1    were sent and the multiple warrants.  I can go back and

2    confirm that all the documents for each warrant is there.

3    It is my understanding they would have all gone.

4            THE COURT:  I will ask you to contact Wyatt and

5    to request the woman in charge of discovery of the

6    pretrial detainees to write a letter to you confirming

7    when she received this replacement disk and whether or

8    not it's been available to the defendant.

9            MS. FREISMUTH:  I will contact Ms. Singleton and

10   ask her.

11           THE COURT:  Thank you.  That doesn't make any

12   sense to me, Mr. Delgado.  There's no reason somebody is

13   going to tell you they are not there, if they are there.

14   Could there have be an glitch, could they have been lost

15   in the mail, could they have been not uploaded so when

16   she went to look, she didn't see anything.  I don't know.

17   We'll find out.  You are going to get the returns.

18   That's a supplemental production that the Government is

19   going to do.

20           Whether or not I grant the request to replace

21   Attorney Kappas, you are going to follow-up, Attorney

22   Kappas, get the letter that you obviously haven't seen

23   and provide a copy to the defendant, and if you are still

24   in the case, you will proceed forthwith to follow-up to

25   find out why the Government isn't going to give you some

1    stuff, find out what they are going to give you and get

2    it and give it to Mr. Delgado.

3         MR. KAPPAS:  Yes.

4         THE DEFENDANT:  Thank you.

5         THE COURT:  I guess I need to ask Attorney

6    Kappas how he wants to proceed.  Normally, when a lawyer

7    has a grievance filed against him, the lawyer's attitude

8    is I can't represent this person.  I think the grievance

9    has no basis.  I'm not the grievance committee.  I don't

10   believe that what's been told to the grievance committee

11   by Mr. Delgado would result in any finding of a

12   grievance.  But again I'm not the grievance committee so

13   it is not my call, but I don't know.  Maybe there's more

14   evidence that Mr. Delgado will put before the committee

15   that might cause them to find something.

16        THE DEFENDANT:  Yes, there is, ma'am.

17        THE COURT:  That's -- yeah.  The problem is, Mr.

18   Delgado, is a lot of defendants file grievances because

19   they know the judge will let the lawyer out.  The lawyer

20   will say I can't be represent a person who filed a

21   grievance against me.

22        My first reaction is I don't think this

23   grievance has legs.  I don't think it has any basis, so I

24   wasn't going to let you, in effect, use that or let

25   Attorney Kappas use it as a way to get out of this

1     representation.  I don't know.

2            If I grant your request to give you a new

3     lawyer, there's a couple of things you have to

4     understand.  I will not give you another lawyer unless

5     the lawyer I give you drops dead.  Okay.  That's number

6     one.

7            Number two, if you grieve him and let's say

8     there's really good grounds for that grievance.   This

9     lawyer.  You never met the lawyer.  He never went to see

10    you, didn't call you, didn't send you anything and the

11    day before jury selection, you've had no representation.

12    No work done, then I will treat that as your view that

13    you need to represent yourself because I can't get you

14    another.  We don't have endless lawyers and you have no

15    right to, you know, the best lawyer in the country.  You

16    have a right to a competent attorney.  You have to

17    understand that.

18           And you also have to understand if I grant your

19    request, I think that the lawyer should be able to be

20    ready for trial.  The problem is people's schedules in

21    the summer are very difficult and whether that new lawyer

22    whom I will select randomly feels they have the time to

23    really dig into this.  Look at everything you want them

24    to look at and decide what they need to do and how to

25    prepare for trial and what investigation needs to be

1    done, their view may be I can't be ready for early

2    September, Judge.  So you need to understand that could

3    be a consequence of a new lawyer.

4              THE DEFENDANT:  I understand.

5              THE COURT:  Any question about those things I

6    listed?

7              THE DEFENDANT:  I kind of want to add, I think

8    that what I have been complaining about these last four

9    months have been exactly what every defendant should be

10   have the right to retain.  That's all I have been

11   complaining about.

12             THE COURT:  You do have a right to discovery,

13   sir.  You are absolutely right.  However, you may not

14   have a right now to all the things you want to discover.

15   Somethings the Government has no obligation to turn over

16   until much closer to trial or during trial.  So there may

17   be some things a lawyer and maybe Attorney Kappas has

18   told you this, we'll get it, but I can't get it now.  I

19   can't make the Government give it to me now.

20             But you certainly are entitled to see the

21   disclosure.  They are required by the rules to turn over

22   and see that now and discuss it with counsel and come up

23   with a plan of defense.  If you are going to trial, how

24   are we going to defend this.  Sometimes the defense is

25   nothing more than challenging the Government's witnesses.

1  That's usually what a defense is.  It may be that you

2  think you can have witnesses that you need the lawyer to

3  find and interview and see if they were going to say what

4  you think they are going to say.  A lot of times that

5  doesn't happen unfortunately.  It is very frustrating for

6  a defendant.  People aren't willing to come to court or

7  be of help or they'll say I won't say that if I come to

8  court, but that all has to be ripe.  That has to be

9  prepared.

10        THE DEFENDANT:  I understand.

11        THE COURT:  I don't know.  Attorney Kappas, do

12  you want to try to stay in the case or do you want to be

13  replaced?

14        MR. KAPPAS:  Your Honor, I am sort of in the

15  dark as to the context of the grievance.

16        THE COURT:  I'm sorry.  Do you want to put your

17  eyes it on quickly?

18        MR. KAPPAS:  My other concern is that Mr.

19  Delgado indicated there's additional evidence that he has

20  for the grievance beyond that which he referenced.

21        THE COURT:  He did say that.

22        MR. KAPPAS:  So based upon those factors, Your

23  Honor, I respectfully be allowed to withdraw.

24        THE COURT:  Take a moment.

25        MR. KAPPAS:  Thank you, Your Honor.

1              THE COURT:  I'm now realizing when you

2      introduced counsel in the back of the courtroom.  I saw

3      Attorney Glasser.  I don't know Attorney Tuckman.

4              MR. TUCKMAN:  Yes, Your Honor.

5              THE COURT:  Apparently a new member of the CJA

6      panel.

7              MR. TUCKMAN:  That's right.

8              THE COURT:  I have no memory of telling Diahann

9      to have standby counsel here.  So first of all, my

10     apologies to you for not acknowledging you sooner.  And

11     I'm sorry.  Things have been rather hectic for me in the

12     last couple of weeks.  I'm not sure why.  I usually only

13     have standby counsel when there's a waiver of a conflict

14     or something and I thought I discussed it with Diahann.

15     She told me I have another defendant there was a need to

16     replace counsel possibly and I said have standby counsel

17     in that case or I didn't need it in that case.  I

18     apologize.  For some reason she thinks I said I need it

19     in this case.  I don't know why I needed it.  I can't

20     remember why I needed it.  I'm trying to think whether

21     there's any benefit with you speaking with Mr. Delgado at

22     this point having heard what's going on here or not.  I'm

23     not sure how you can be of help.  If you think you can be

24     of help, I will take any help I can get.

25             MR. TUCKMAN:  I'm at the Court's service.  I

1    heard, you know, what has been stated in court.  I had

2    previous to that some conversations with AUSA Freismuth

3    and with Attorney Kappas.  I don't think there's a whole

4    lot I can add right now.

5           THE COURT:  All right.  I really apologize. I

6    think it was a matter of my poor communication with

7    Diahann.  I appreciate you being here and Attorney

8    Glasser, always good to see you.  I'm wondering what's

9    Attorney Glasser doing here.  That's fine.  You are

10   always welcome.  I was thinking of your dad when I

11   commented on the time to disclose certain materials

12   during the trial versus sooner.  I think he's right, but

13   then again I don't often agree with the Circuit on many

14   things but anyway.

15          Attorney Kappas, I know you are eyeballing it,

16   so you have a sense of what's in there.

17          MR. KAPPAS:  I think Your Honor mentioned it

18   earlier, I think there's an ethical issue with regard to

19   my continued representation of Mr. Delgado.  The fact

20   he's got additional evidence that may warrant additional

21   claims to the grievance committee.  I don't see how I'm

22   able to stay in the case in this regard.

23          THE COURT:  I would respectfully disagree with

24   you.  I think your view that you just articulated has

25   historically been my view but after having a number of

```
1     these, I think I have come to the view even with a
2     grievance pending, if I look at it and knowing the case,
3     my view is this grievance really has no grounds, and
4     there's been replacement of counsel, there's some history
5     involved, I think I have the authority to say no, I'm not
6     replacing counsel and I guess if the defendant really
7     objected, then I would say to him you're going pro se.  I
8     think this will be the first time I will take that
9     position, so I think I will not take it in this case and
10    I will let you out because I want to be -- but I want to
11    be able to put Attorney Kappas on notice that in the
12    future filing a grievance, if it has, in my view, doesn't
13    have any basis, in other words, what's complained of is
14    really not grieveable, it is not ineffective counsel, it
15    is not a violation of the canons, then I will take that
16    position that time.  That's what I tried to explain to
17    Mr. Delgado that won't be a basis for me to replace and I
18    won't let the counsel out even if the counsel like
19    Attorney Kappas wants to be let out.
20            For that reason to be able to let Mr. Delgado
21    know the consequences, I will let you out, but I do want
22    to say on the record that I think I have the authority to
23    make you stay or make the next person stay.
24            MR. KAPPAS:  Your Honor, as an officer of the
25    court, I will do everything to assist counsel whoever
```

1    that may be getting up to speed on the file.

2         THE COURT:  You need to do that.  Before

3    somebody is appointed, I will keep your appearance on the

4    record.  I would expect you to represent Mr. Delgado even

5    though he doesn't want your representation in the form of

6    finishing what you started what a month and a half,

7    month, month and a half ago, get a copy of that letter.

8    See what the position of the Government is.  Are they

9    reasonable, not reasonable, get it out to Mr. Delgado.  I

10   think you should be a part of finding out what's

11   happening at Wyatt.  These things that I specifically

12   ordered be sent.  Attorney Freismuth said were sent.  Mr.

13   Delgado is now saying he's not getting access to.  That

14   should be solved.  You should communicate with Mr.

15   Delgado, look, if you go now and ask for an appointment

16   with the paralegal, there will be something there for you

17   to read.

18        What's the Government's view on the things that

19   are on the disk?  Does the Government take the position

20   that the defense lawyer can't give his client copies,

21   paper copies to take back to his cell?

22        MS. FREISMUTH:  Which disk are you referring?

23        THE COURT:  I'm talking about the search

24   warrants.

25        MS. FREISMUTH:  Anything that's been publicly

1    docketed I don't see any reason for it to be protected

2    material.  Anything else pertaining to like investigative

3    reports, things of that nature, yes, I would take the

4    position they are protected material.

5         THE COURT:  I would ask Attorney Kappas before

6    you are replaced, if you would confer with the

7    Government, make sure you understand their view of what

8    on the disk can be printed for Mr. Delgado and I would

9    print copies.  I would ask that you print copies and mail

10   them to him.

11        With respect to the other material, if it is not

12   public, there's a concern about things being around the

13   prison or the facility and so unless you can make some

14   compelling showing which would have to be a motion your

15   lawyer made, which I'm not sure I have ever granted such

16   motions, I'm not saying I wouldn't, but if there's a

17   compelling reason for you to have it in paper or have

18   access to it in paper, we'll work on that.  Right now I

19   don't see that it is going to harm your ability to get

20   ready.  If there's some things that can be in paper, then

21   fine.  We'll give them to you.  Not me.  But the lawyer.

22        THE DEFENDANT:  Thank you.

23        THE COURT:  Is there anything else that we

24   should take up?

25        MS. FREISMUTH:  We do have one additional issue

1    in discovery, Your Honor, which are the recorded prison

2    calls from the defendant.  Last time we were here the

3    Government and defense counsel we talked to the Court

4    about how we need a further trial date for transcribing

5    those calls.  The Government has identified which ones we

6    intend to have transcribed.

7         There's over 74 hours.  So we have picked out

8    the ones that we have sent out to be transcribed.  We're

9    waiting for them.  We anticipate getting them in a

10   reasonable time frame.

11        However, we have since obtained numerous other

12   hours of recorded prison calls that I'm going to produce

13   to defense counsel today.  I'm not sure how he wants to

14   proceed in terms of reviewing them.  It is our position

15   that some are with his codefendant.  If we're able to

16   identify those and want to use them at trial, we would

17   have them transcribed.  At this point, I haven't reviewed

18   them.  I don't know.

19        THE COURT:  Turn them over to counsel.  He'll

20   have the responsibility to bring them to new counsel and

21   bring them up to speed on what has to happen.  They will

22   have to talk to you about what's going to be transcribed

23   and when.  If we're going to trial in September, it ought

24   to be sooner than later.

25        MS. FREISMUTH:  That's why I raised the issue.

1    I know Attorney Kappas in our discussions raised a

2    concern that he might need to have all of the calls

3    transcribed.  That's not the Government's view.

4    Something that's raised in the May letter.

5            THE COURT:  You are going to produce all of the

6    calls.

7            MS. FREISMUTH:  Yes, Your Honor.

8            MR. KAPPAS:  I believe the initial disclosure

9    was provided to Mr. Delgado at Wyatt, so he could listen

10   to those calls.  They are purportedly his calls.  I ask

11   whatever additional information also be provided to him

12   at Wyatt, so he can review those.

13           THE COURT:  Can you confirm a disk was sent with

14   these recordings?

15           MS. FREISMUTH:  I don't think they will fit on a

16   disk.  They are voluminous.  We'll have to do them on a

17   flash drive.  I'm not sure they are materials that can be

18   made available for the defendant to review.

19           THE COURT:  I think he has a right to review

20   them.  I think you should speak to the Wyatt person and

21   discuss the volume and the fact they may be on a flash

22   drive.  Does she have the capacity on her computer to

23   utilize that, to upload it so he can listen in the

24   facility there for some period of time every day.  He's

25   going to have to get started listening.

1          MS. FREISMUTH:  We agree it would be

2    advantageous.

3          THE COURT:  As far as counsel going over them,

4    obviously you are not going to be the counsel.  I think

5    new counsel has to understand there's a huge volume.

6    When is the Government going to identify which ones they

7    expect -- I'm not saying it is written in stone -- what

8    ones you will use in evidence but at least narrow it down

9    among these we're going to use some at trial.

10          MS. FREISMUTH:  We're working on it, Your Honor.

11   We have identified the ones we know for sure are with his

12   codefendant that would be admissible at trial.  We're

13   working on the other ones because they are using a

14   three-way call to try to disguise who is on calls.  We're

15   in the process of trying to identify which ones are with

16   the codefendant.

17          THE COURT:  I would think those should be

18   provided on a separate disk when you identify the ones

19   that are in the universe of likely offered at trial.

20          MS. FREISMUTH:  To be perfectly candid, none of

21   the prosecution speaks Spanish, so we run into a delay.

22   We'll be producing all of the calls to defense counsel

23   and I will provide follow-up with Ms. Singleton.

24          THE COURT:  You intend to prepare for

25   identification at trial a transcript in Spanish and

1    translated or just translated or both?

2              MS. FREISMUTH:  Just the translated version.

3              THE COURT:  For I.D.

4              MS. FREISMUTH:  Assuming it is a two-defendant

5    case, yes, Your Honor.

6              THE COURT:  It's been a long time since I had

7    recordings in Spanish at trial.  We'll play the original

8    recording in Spanish, but tell the jury not to use their

9    Spanish and translate it, and then we'll have an official

10   translator tell us what the words are in English?

11             MS. FREISMUTH:  I also have not introduced

12   Spanish calls previously.  I will find out.

13             THE COURT:  That's good, then you will let me

14   know.

15             MS. FREISMUTH:  I will produce them sufficiently

16   in advance of trial for defense counsel.

17             THE COURT:  We have to really get this process

18   moving.  I guess the other thing I would say to Mr.

19   Delgado is he might want to consider his phone calls he's

20   making.  This will continue forever.  We'll have to

21   continue the trial because they will say I have new

22   evidence.  I have to get it translated.  I have to get it

23   produced in discovery.  Then I will have to get ready for

24   trial and they will say we need more time.  That's not a

25   crazy request.  So I think I don't know.  I don't know

1    what your counsel said to you about it.  I'm not supposed

2    to give you advice.  I would ask you to look at the

3    situation and ask yourself should you be making more

4    calls to whoever but that's your choice.  But it is

5    obviously becoming evidence against you.  So I think you

6    want to talk to the new lawyer, certainly want to talk to

7    you about this and ask for advice I guess.  That's how I

8    would put it.  All right.

9           I'm trying to think.  I may schedule a status

10   conference in the case sometime in mid-July when new

11   counsel is in and had a chance to be out, figure out what

12   discovery that's out there, what needs to be fixed, got a

13   sense of these phone calls and the issues surrounding

14   them.  I think we need a status conference to find out

15   are we going to go in September.  If not, what's the

16   problem.  What do we have to deal with.  I think we need

17   that in this case.  Otherwise I have the feeling this

18   case is never going to get tried.  There's always

19   something coming up.  I don't know the date.  I will

20   look.  Diahann, remind me in the next day or so to look

21   for a date.  It will be the second or third week in July.

22   The trials I had have gone away.  I should have some

23   time.  Hopefully, you are not all on vacation at

24   different times.

25           Anything further?

```
 1            MS. FREISMUTH:  No, Your Honor.

 2            THE COURT:  It will take a few days for a new

 3    lawyer to get appointed and get out to see you.  You

 4    should be seeing someone in a week or so I would think.

 5    Obviously Attorney Kappas is going to turn over

 6    everything and bring the lawyer up to speed as to what's

 7    happened in the case.  We'll stand in recess.

 8            (Whereupon, the above hearing adjourned at 1:26

 9    p.m.)

10

11

12            COURT REPORTER'S TRANSCRIPT CERTIFICATE.

13    I hereby certify that the within and foregoing is a true

14    and correct transcript taken from the proceedings in the

15    above-entitled matter.

16

17

18    /s/  Terri Fidanza

19    Terri Fidanza, RPR

20    Official Court Reporter

21

22

23

24

25
```