UNITED STATES DISTRICT COURT
District of Connecticut

UNITED STATES OF AMERICA           :   CRIMINAL NO. 3:18-CR-165(JCH)

v.                                 :

CARLOS DELGADO                     :   DECEMBER 3, 2020

**MEMORANDUM IN AID OF SENTENCING**

The undersigned, respectfully submits this memorandum as an aid to the Court in the sentencing of Mr. Delgado.

**I.   INTRODUCTION**

On January 21, 2020, Carlos Delgado was convicted following a jury trial of three Counts of a four-count Indictment, Count one charged him with Conspiracy to Possess with Intent to Distribute more than five Kilograms of Cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(i)(A)(i); Count Two with Conspiracy to Distribute more than One Kilogram of Heroin, in violation of 21 U.S.C. 846, 841(b)(1)(A); and Count Three with Unlawful Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. 922(g)(1).   Mr. Delgado was acquitted of Count Four which charged him with Use of a Firearm in a Drug Transaction, 18 U.S.C. 924(c). The parties agree that Mr. Delgado falls into a Criminal History Category of III.

The Presentence Report in this case concludes that Mr. Delgado's adjusted offense level is 42.  A total offense level of 42, coupled with Mr. Delgado's criminal history Category of III, would result in a Guideline range of 360 months to life imprisonment.  The PSR arrives at this calculation by assessing Mr. Delgado a converted drug weight of 5400 kilograms of marijuana, which results in an offense level of 32. The PSR also applies a two level enhancement for

1

Possessing a Dangerous Weapon; another two levels were added for importation of the drugs Puerto Rico and Mexico, four levels are added for his role as an organizer or leader of a criminal activity that was otherwise extensive; and finally an additional two levels were added for Obstruction of Justice, USSG3C1.1.  The undersigned would ask the Honorable Court to consider the following objections to the Pre sentence Report; paragraph 49, which applies the two level enhancement for the possession of the dangerous because Mr. Delgado was acquitted of this conduct by the jury; paragraph 50 which applies a two level enhancement for the importation of the controlled substances because Puerto Rico is a territory of the United States and there is insufficient evidence to support the allegation that Mr. Delgado was "directly" involved in the importation of drugs from Mexico; paragraph 52 which applies a four level enhancement for his role in the offense because there were only two other individuals charged in the Indictment, Mr. Delgado had no supervisory role, and there is no independent evidence that the activities were "otherwise extensive."; and finally paragraph 53 which applies a two level enhancement for Obstruction of Justice, because the language cited as the basis for the enhancement in the PSR is too vague to support this enhancement.  Therefore, if the Court agreed that these enhancements should not apply to Mr. Delgado, his Offense level would be 32, and coupled with a criminal History category of three, his sentencing guideline range would be 151 to 188 months of incarceration.   Even if the Court were to find that all of the enhancements put forward in the PSR applied to Mr. Delgado, the undersigned would suggest to the Court that the sentencing guideline range the Court should consider for Mr. Delgado is 151 months to 188 months of incarceration.  Mr. Delgado is fifty one years old and the application of a guideline range of thirty years to life for a man his age, convicted of a non-violent drug offense, would in

effect be a life sentence, even if the Court sentenced him at the bottom of the that Guideline range.

**LEGAL STANDARD**

The Guideline range provides the "starting point and the initial benchmark" for the Court in considering an appropriate sentence. *Gall v. United States,* 552 U.S. 38, 49 (2007). The Second Circuit has identified the following principles governing the selection of sentences:

> First, the Guidelines are no longer mandatory. Second, the sentencing judge must consider the Guidelines and all of the other factors listed in section 3553(a). Third, consideration of the Guidelines will normally require determination of the applicable Guidelines range, or at least identification of the arguably applicable ranges, and consideration of applicable policy statements. Fourth, the sentencing judge should decide, after considering the Guidelines and all the other factors set forth in section 3553(a), whether (I) to impose the sentence that would have been imposed under the Guidelines, i.e., a sentence within the applicable Guidelines range or within permissible departure authority, or (ii) to impose a non-Guidelines sentence. Fifth, the sentencing judge is entitled to find all the facts appropriate for determining either a Guidelines sentence or a non-Guidelines sentence.

*United States v. Crosby,* 397 F.3d 103, 113 (2d Cir. 2005). These principles do not render the Guidelines a mere "body of casual advice," and instead require the courts to "'consider' the Guidelines and all of the other factors listed in in § 3553(a)" in reaching an individualized sentence. *Id.,* at 113–4; *see also Gall,* 552 U.S. at 50 (requiring an "individualized assessment based on the facts presented"). § 3553(a) provides the following factors for the Court's consideration in imposing a sentence:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
>    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>    (B) to afford adequate deterrence to criminal conduct;
>    (C) to protect the public from further crimes of the defendant; and

3

       (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for--
       (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--
           (i) issued by the Sentencing Commission . . .
(5) any pertinent policy statement--
       (A) issued by the Sentencing Commission . . .
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). The goal of these strictures and the governing precedent is a mechanism that enables sentencing judges to arrive at sentences that are, pursuant to § 3553(a), "sufficient, but not greater than necessary, to comply with the purposes" of the federal sentencing regime. *Id.*

## II. ARGUMENT

### a. The United States Constitution Prohibits the Consideration of Conduct for which a Defendant was acquitted by a Jury to Increase the Defendant's Offense Level at Sentencing.

The undersigned respectfully submits that the two level enhancement under USSG2D1.1(b)(2) for possessing a firearm should not apply in this case because Mr. Delgado was acquitted of this conduct. While the letter of the Sixth Amendment embraces a fundamental right to trial by jury in criminal cases, its protections and its very spirit have been eroded by a string of decisions legitimizing the use of acquitted conduct at sentencing. In 1997, the United States Supreme Court decided the case of *United States v. Watts,* wherein it held that "a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." 519 U.S. 148, 157 (1997). When the Court decided *Apprendi v. New Jersey* a mere

4

three years later, and held that the use of judicially-determined facts to enhance a defendant's sentence violated the Sixth Amendment, 530 U.S. 466 (2000), the continued viability of *Watts* appeared in doubt. However, on the heels of *Apprendi* came *United States v. Booker,* which effectively rendered the Guidelines advisory, and also concluded that *Watts* was not "inconsistent" with its holding. 530 U.S. 220, 241 (2005).

The Appellate Courts have since interpreted *Watts* and *Booker* to license the use of acquitted conduct at sentencing, despite arguments that the practice violates the Sixth Amendment's right to a jury trial and the Double Jeopardy Clause. At present, every federal circuit permits its district courts to consider acquitted conduct at sentencing.[1]

In the Second Circuit, the primary case in this area is *United States v. Vaughn,* 430 F.3d 518 (2d Cir. 2005). In *Vaughn,* a jury convicted two defendants of conspiring to distribute marijuana. *Id.* at 521. In response to a special interrogatory, the jury found that the Government had proved that the defendants' conduct had involved at least fifty but not more than 100 kilograms of marijuana. *Id.* However, at sentencing, the district court found by a preponderance of the evidence that the defendants' conduct involved 544 kilograms of marijuana. *Id.* The Second Circuit, in approving this exercise of judicial discretion, opined that the district courts are licensed to

> find facts relevant to sentencing by a preponderance of the evidence, even where the jury acquitted the defendant of that conduct, as long as the judge does not impose (1) a sentence in the belief that the Guidelines are mandatory, (2) a

---

[1] *See e.g., United States v. Cox,* 851 F.3d 113, 120–26 (1st Cir. 2017); *United States v. Vaughn,* 430 F.3d 518 (2d Cir. 2005); *United States v. Hayward,* 177 Fed. Appx. 214, 215 (3d Cir. 2006); *United States v. Ibanga,* 271 Fed. Appx. 298, 300 (4th Cir. 2008); *United States v. Farias,* 469 F.3d 393, 399–400 (5th Cir. 2006); *United States v. White,* 551 F.3d 381 (6th Cir. 2008); *United States v. Price,* 418 F.3d 771, 786–88 (7th Cir. 2005); *United States v. High Elk,* 442 F.3d 622, 625–26 (8th Cir. 2006); *United States v. Mercado,* 474 F.3d 654 (9th Cir. 2007) (collecting cases); *United States v. Magallanez,* 408 F.3d 672, 684–6 (10th Cir. 2005); *United States v. Duncan,* 400 F.3d 1297, 1304 (11th Cir. 2005); *United States v. Dorcely,* 454 F.3d 366, 371–73 (D.C. Cir. 2006).

> sentence that exceeds the statutory maximum authorized by the jury verdict, or (3) a mandatory minimum sentence under § 841(b) not authorized by the verdict.

*Id.* at 527 (citing *United States v. Gonzalez,* 420 F.3d 111, 129 (2d Cir. 2005)).

The Second Circuit based its holding in *Vaughn* on the conclusion that "Justice Stevens' discussion in *Booker* indicates that *Watts* remains good law." *Id.* at 526. However, it is worth noting that Justice Stevens went on to explain that *Watts,* unlike *Booker,* did not present the question of whether a "sentencing enhancement had exceeded the sentence authorized by the jury verdict in violation of the Sixth Amendment." *Booker,* 543 U.S. at 240. Justice Stevens summarized the issue thus:

> *Watts*, in particular, presented a very narrow question regarding the interaction of the Guidelines with the Double Jeopardy Clause, and did not even have the benefit of full briefing or oral argument. It is unsurprising that we failed to consider fully the issues presented to us in these cases.

*Id.* at 240, n. 4. Stevens' opinion in *Booker* confirms that not only was *Watts* dealt with in cursory fashion by the *Booker* court, but also, *Watts* itself did not have the benefit of full briefing and argument. Moreover, *Watts* itself was predicated not on the Sixth Amendment's jury trial protections, but on the Double Jeopardy Clause of the Fifth Amendment. *Watts,* 519 U.S. 148. When *Watts* arose in *Booker,* it was not for consideration of its merits but rather as an example offered by the Government as to why *Blakely*[2] could not be applied to the Sentencing Guidelines. *Id.* at 239. So when the *Booker* court considered *Watts,* it was only to conduct an inquiry into whether *Watts'* narrow Double Jeopardy holding comported with *Blakely.* And yet, in the years since *Booker,* every federal circuit to address the issue has concluded that *Booker* legitimizes the use of acquitted conduct at sentencing under the Sixth Amendment. It is upon this unsteady

---

[2] In *Blakely v. Washington,* the United States Supreme Court concluded that a sentencing procedure employed by the State of Washington, which permitted a judge to make factual findings that increased the statutory maximum penalty for the offense of conviction violated the Sixth Amendment. 542 U.S. 296 (2004).

foundation that the Second Circuit has rested its approval of acquitted conduct in the years following *Booker. E.g., Vaughn,* 430 F.3d at 526.

In reality, the issue before this Court today is one that was not properly presented in either *Watts* or *Booker:* that in enhancing a criminal defendant's sentence based on conduct for which the defendant was acquitted at trial, the Court violates the Sixth Amendment's right to a jury trial.

In both the original Constitution and the Bill of Rights, the Framers guaranteed to the citizenry the absolute right to trial by jury. *See* U.S. Const. Art. III, § 2, cl. 3; U.S. Const. Amend. 6. The Supreme Court has cast this fundamental right as the "great bulwark of [our] civil and political liberties," *Apprendi,* 530 U.S. at 477, and as a mechanism "designed to guard against a spirit of oppression and tyranny on the part of rulers[.]" *United States v. Gaudin,* 515 U.S. 506, 510-511 (1995); *see also Duncan v. Louisiana,* 391 U.S. 145, 155 (1968) ("A right to jury trial is granted to criminal defendants in order to prevent oppression by the Government."). The jury trial right is "no mere procedural formality," but rather a "fundamental reservation of power in our constitutional structure." *Blakely v. Washington*, 542 U.S. 296, 306 (2004).

And yet, *Watts* and its progeny in the federal circuits permit a trial court to wholly disregard the verdicts issued by lawfully impaneled juries. This disregard offends the protections enshrined at the very heart of the Sixth Amendment jury trial right. What is worse, the current state of the law allows the trial courts to actually enhance the punishments imposed on criminal defendants based on the same facts that the jury rejected at trial. In this system, the jury is "relegated to making a determination that the defendant at some point did something wrong, a mere preliminary to a judicial inquisition into the facts of the crime the State *actually* seeks to punish." *Id.* at 307 (emphasis in original). It would seem illogical to conclude, as most federal

7

courts do, "that the Sixth Amendment is violated whenever facts essential to sentencing have been determined by a judge rather than a jury, and *also* conclude that the fruits of the jury's efforts can be ignored with impunity by the judge in sentencing." *United States v. Pimental,* 367 F. Supp. 2d 143, 150 (D. Mass. 2005) (citing *Blakely,* 542 U.S. 296) (emphasis in original). But that is precisely the conclusion that the trial courts reach when they rely on acquitted conduct at sentencing. "[W]hen a court considers acquitted conduct it is expressly authorizing facts that the jury verdict not only failed to authorize; it considers facts of which the jury expressly disapproved." *Id.* at 152. This is the "bizarre" aspect of acquitted conduct, by which "a defendant can receive the same sentence whether he is convicted or acquitted." 983 F.3d 369, 395 (2d Cir. 1993) (Newman, J. dissenting). "A just system of criminal sentencing cannot fail to distinguish between an allegation of conduct resulting in a conviction and an allegation of conduct resulting in an acquittal." *Id.* at 396. Our federal sentencing regime does just that, and in so doing offends the letter and spirit of the Sixth Amendment. "[W]hen the central justification . . . for such an extraordinary increase in the length of imprisonment is the very conduct for which the jury acquitted the defendant," the great bulwark of our civil liberties "becomes little more than a speed bump at sentencing." *United States v. Bell,* 808 F.3d 926, 929 (D.C. Cir. 2015) (Millett, J., concurring in the denial of a petition for rehearing *en banc*).

To be sure, federal law has always embraced some measure of judicial fact-finding at sentencing, and this fact-finding often exceeds the confines of the jury verdict in a literal sense. For example, the sentencing court is directed to consider, *inter alia*, the specific characteristics of the defendant, the nature of his relationship with law enforcement, and his prior criminal history. *See United States v. O'Brien,* 560 U.S. 218, 224 (2010) (recognizing that sentencing factors "can be proved to a judge at sentencing by a preponderance of the evidence."). The obvious rejoinder

then, from proponents of acquitted conduct, is that the uncharged or acquitted conduct offered to the court at sentencing is just another one of these sentencing factors. *See e.g., Vaughn,* 430 F.3d at 526 ("Appellants' argument misses the distinction between elements of an offense and facts relevant to sentencing. Elements of an offense must be tried to a jury, but facts relevant to sentencing may be found by a judge.").

The fundamental problem with that argument, as noted above, is that acquitted conduct is of a wholly different character than typical facts relevant to sentencing. Other common sentencing factors like cooperation and criminal history are unique to the sentencing proceeding, in that they are not generally analyzed or even considered by the jury at trial. The Court is free to make findings as to these factors because it is the only body vested with the authority and the discretion to properly consult them. However, as noted above, when the trial courts consider acquitted conduct, they are necessarily substituting their judgment for the judgment of the lawfully impaneled jury. In this scenario, the courts are not merely determining sentencing factors, they are "materially increase[ing] the length of imprisonment based on facts that were *submitted directly to and rejected by* the jury." *Bell,* 808 F.3d at 930 (Millett, J., concurring).

Additionally, it is worth examining whether *Watts* and *Vaughn* remain good law in light of intervening Supreme Court precedent. In *Alleyne v. United States,* the Court held that the Sixth Amendment does not permit a judge, without a jury verdict, to determine any fact that "alter[s] the prescribed range of sentences to which a defendant is exposed and do[es] so in a manner that aggravates the punishment." 133 S. Ct. 2151, 2158 (2013). *Alleyne's* holding extends to statutory limitations and not to the underlying Guideline ranges, but it is not difficult to see how the principle would apply to the issue here.

Practically speaking, in today's "modified real offense" framework, it is the Guidelines—and not the statutory maximum penalties for individual offenses—that set the operative outer limits of a lawful sentence. That is, even in an advisory Guideline system, it is the Guideline range that will practically determine the contours of a sentence in the vast majority of federal criminal cases.[3] While those Guidelines are no longer binding in a literal sense, they will very often be mandatory by virtue of the manner in which they are applied. *See Rita v. United States,* 551 U.S. 338, 366 (2007) (Stevens, J., concurring) (recognizing that "as a practical matter, many federal judges continue[] to treat the Guidelines as virtually mandatory after our decision in *Booker.*"). This is especially apparent given the rule that a sentence within the Guideline range is presumptively lawful, and that any "major departure" from the range requires "significant justification." *Gall,* 552 U.S. at 50, 51. Where acquitted conduct is concerned, that significant justification takes the form of judicially-determined facts—facts expressly rejected by the jury—established by something less than the exacting standard that is required for criminal deprivations of liberty. *See In re Winship,* 397 U.S. 358, 364 (1970) (It would amount to "a lack of fundamental fairness" to permit a defendant to be "imprisoned for years on the strength of the same evidence as would suffice in a civil case."). If the Guideline range practically represents the outer limit of a federal sentence (in the absence of some additional factor), then *Alleyne* suggests that a jury must determine any fact that would operate to aggravate the punishment with respect to that range. The use of acquitted conduct at sentencing is an affront to the jury trial protections of the Sixth Amendment. This Court should decline the invitation to consider conduct of which Mr. Delgado was acquitted by the jury.

---

[3] For the 2017 fiscal year, the United States Sentencing Commission reported that 97.1% of criminal cases were sentenced within or below the Guideline range. United States Sentencing Commission, *Statistical Information Packet, Fiscal Year 2017, Second Circuit,* at 11 (2018). In the Second Circuit, that number was even higher, with 98.2% of cases within or below the Guideline range. *Id.*

### b. Even if the Constitution Permits the Use of "Acquitted Conduct" at Sentencing, this Court Should Decline to Resort to it in this Case.

The Second Circuit has frequently noted that "while district courts may take into account acquitted conduct in calculating a defendant's Guidelines range, they are not required to do so." *Vaughn,* 430 F.3d at 528. "Rather, district courts should consider the jury's acquittal when assessing the weight and quality of the evidence presented by the prosecution and determining a reasonable sentence." *Id.* (citing *United States v. Cordoba-Murgas,* 233 F.3d 704, 709 (2d Cir. 2000); *United States v. Gigante,* 94 F.3d 53, 56 (2d Cir. 1996)). In the instant case, the evidence offered by the Government as to Mr. Delgado's use of a firearm in his drug trafficking was lacking, and the jury correctly disregarded it.

Moreover, recent developments in law and legal scholarship have begun to cast doubt on the continued validity of acquitted conduct at sentencing. In 2014, the late Justice Scalia authored a strongly worded dissent from a denial of certiorari, joined by Justices Thomas and Ginsburg, in *Jones,* 135 S. Ct. 8. In *Jones,* the petitioners were convicted after a jury trial of distributing small amounts of crack cocaine, but acquitted at the same trial of conspiracy to distribute drugs. *Id.,* at 8; *see also United States v. Jones,* 744 F.3d 1362 (D.C. Cir. 2014). At sentencing, however, the judge expressly found that the petitioners had participated in the charged conspiracy and imposed sentences that allegedly exceeded the sentences that would have been recommended by the Guidelines. *Id.* The Supreme Court denied certiorari in a summary order likely based on the uniform acceptance of this practice in the federal courts. Justice Scalia dissented from this denial of certiorari, writing that "any fact necessary to prevent a sentence from being substantively unreasonable—thereby exposing the defendant to [a] longer sentence— is an element that must be either admitted by the defendant or found by the jury. It *may not* be

found by a judge." *Id.* Ultimately, Justices Scalia, Thomas, and Ginsburg opined that the federal courts' assault on the Sixth Amendment "has gone on long enough." *Id.* at 9.

This sentiment was echoed just a year later by then-Judge Brett Kavanaugh of the D.C. Circuit Court of Appeals, who concurred with that Court's denial of a petition for rehearing *en banc* in *United States v. Bell,* 808 F.3d 926 (D.C. Cir. 2015) (Kavanaugh, J., concurring in the denial of a petition for rehearing *en banc*). Justice Kavanaugh wrote that, notwithstanding *Watts* and *Booker*, "[a]llowing judges to rely on acquitted or uncharged conduct to impose higher sentences than they otherwise would impose seems a dubious infringement of the rights to due process and to a jury trial." *Id.,* at 928. While Justice Kavanaugh incorporated many of the concerns raised by his colleague Judge Millet, who wrote in the same case that "allowing a judge to dramatically increase a defendant's sentence based on jury-acquitted conduct is at war with the fundamental purpose of the Sixth Amendment's jury-trial guarantee," *Id.,* at 929, Justice Kavanaugh also opined that the power to protect the constitutional rights infringed by the use of acquitted conduct at sentencing lay in the hands of the district courts. *See Id.,* at 928 ("[E]ven in the absence of a change of course by the Supreme Court, or action by Congress or the Sentencing Commission, federal district judges have power in individual cases to disclaim reliance on acquitted or uncharged conduct."). For all of the above reasons this Court should decline to apply the two level enhancement for possessing a dangerous weapon in this case.

      **c.  An Enhancement for an Aggravating Role in the Offense is Unwarranted.**

§ 3B1.1(c) provides that "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels." Accordingly, if this adjustment is to apply to Mr. Delgado, the Court must find that he was an "organizer, leader, manager, or supervisor" of a drug trafficking organization. Application Note

12

4 to § 3B1.1 suggests a distinction between organizer and leaders on one hand, and managers and supervisors on the other. The Second Circuit also looks to the factors provided at that Note when determining whether a defendant was an organizer or leader. *E.g. United States v. Gaskin,* 364 F.3d 438, 467 (2d Cir. 2004). Those factors include:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

Application Note 4 to U.S.S.G. § 3B1.1.

The evidence bore out in this case was that Mr. Delgado was a lone operator who distributed narcotics for himself, albeit it on a large scale. In this case, the Government's evidence did not establish that Mr. Delgado was either an organizer or leader in the drug conspiracy. Whether a defendant is a manager or supervisor of a criminal activity is a related question. The Second Circuit has held that this question depends on whether he "exercised some degree of control over others involved in the commission of the offense . . . or played a significant role in the decision to recruit or to supervise lower-level participants." *United States v. Burgos,* 324 F.3d 88, 92 (2d Cir. 2003) (quoting *United States v. Blount,* 291 F.3d 201, 217 (2d Cir. 2002)). Again, the evidence that Mr. Delgado exercised any control over the participants in the conspiracy is lacking. Mr. Delgado was convicted of distributing narcotics to participants in the conspiracy, but there is no evidence that he directed future sales or set prices, or provided any direction to the purchasers whatsoever. Accordingly, an adjustment for Mr. Delgado's role in the offense is unwarranted.

**d.      The two level enhancement for the importation of Narcotics should not apply.**

There is no direct evidence that Mr. Delgado was "directly" involved in the importation of narcotics in this case. First of all Puerto Rico is a Territory of the United States and therefore cannot be a source of "importation" of narcotics. Additionally, while there was evidence that Mr. Delgado received drugs that originated from Mexico, there is no evidence that he was directly involved in the importation of these drugs into the United States.

**e.     The two level enhancement for Obstruction of Justice should not apply in this case.**

The PSR bases this two level enhancement on the Defendant reaching out to several individuals in an attempt to interfere with the investigation but only cites one example of perceived interference. In this example Mr. Delgado sent a letter to a co-defendant with a docket entry for a scheduled plea and stated in the letter, "Yo! What's this?? Are you taking a plea deal in exchange for your testimony against me?? I hope this is not what I'm thinking?? Is this why you haven't moved down here??" There is nothing in this language that would support an enhancement for Obstruction of Justice. There are no threats, and there is no suggestion that he not plead guilty, or even that the reader not cooperate against him. This language is just too vague to support an enhancement for Obstruction of Justice.

### III.     MR. DELGADO'S BACKGROUND AND THE OFFENSE CONDUCT

The undersigned is asking the Honorable Court to consider Mr. Delgado's upbringing and childhood, and impose a sentence will be sufficient to punish him for the conduct that the jury convicted him of, without depriving him of the opportunity to have a meaningful portion of his remaining life outside of prison. Carols Delgado is a fifty-one year old man who has had a troubled life. He has a family that loves and supports him and he has two relatively young children whom he loves very much. He was physically and emotionally abused by his drug addicted father who abandoned the family when Carlos was twelve years old. The abuse Carlos

suffered at the hands of his father has effected Carlos his entire life. It is the untreated psychological damage he suffered as a child that has led him to where he is today facing a potential life sentence in prison.

I guess the question facing the Court is what sentence is sufficient but not greater than necessary to accomplish the goals of sentencing in this case. For a fifty-one year old man with Carlos's history the undersigned suggests a sentence of between 151 to 188 months, and the undersigned asks the Court to impose a sentence at the bottom of that range. Such a sentence will certainly punish Carlos for his conduct, and 151 months is approximately four times longer than any previous sentence Carlos has served.[4] Additionally, while Carlos has an extensive criminal history he has no felony convictions for violence.[5] So what is the appropriate sentence for a non-violent drug offender who is fifty-one years old? Is thirty years the appropriate sentence? That would be an outrageous sentence! This case cries out for a non-guideline sentence substantially below the guideline range recommended in the PSR. The undersigned suggests 151 months of incarceration is sufficient but not more than necessary to accomplish the goals of sentencing for Carlos Delgado.

**CONCLUSION**

In light of the foregoing, the undersigned respectfully requests that this Honorable Court impose a non-guideline sentence substantially below the proffered Guideline range in the Pre Sentence Report. Such a sentence will serve to punish Carlos for his crimes while also allowing him a chance at rehabilitation and the opportunity to live a meaningful portion of the remainder of his life outside of prison.

---

[4] A Mishoe type departure is surely appropriate in this case.

[5] His only conviction of a violent nature is a 1989 Assault 3rd conviction, which is a misdemeanor.

THE DEFENDANT

**By:** **/s/ CT17505**
Francis L. O'Reilly, Esq.
Fed. Bar No.: CT17505
41 Unquowa Place
Fairfield, CT 06824
Phone: 203-319-0707
Fax: 203 319-0128

## CERTIFICATION

The undersigned hereby certifies that a copy of the foregoing was electronically filed this 3rd day of December, 2020:

**/s/ CT17505**
Francis L. O'Reilly